# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| J.C. PENNEY PURCHASING CORPORATION AND J.C. PENNEY CORPORATION, INC. | § § § § | |
| V. | § § | CASE NO. 4:13-CV-684 Judge Mazzant |
| WELCO, INC. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Welco, Inc.'s Motion for Partial Summary Judgment (Dkt. #10), Defendant Welco, Inc.'s Motion for Summary Judgment (Dkt. #18), and Plaintiffs' Motion for Oral Argument (Dkt. #24). After considering the motions, the responses, and the relevant pleadings, the Court finds the following as to each motion.

## BACKGROUND

Plaintiffs, J.C. Penney Purchasing Corporation and J.C. Penney Corporation, Inc. ("J.C. Penney" or "Plaintiffs"), filed suit against Defendant Welco, Inc. ("Welco" or "Defendant"), alleging breach of contract of the duty to defend and indemnify, statutory duty to defend and indemnify, and breach of contract of the duty to provide liability insurance (Dkt. #11). Plaintiffs contend that Defendant owes a duty to defend and indemnify Plaintiffs related to a products liability lawsuit. Specifically, in the late 1990s and early 2000s, Defendant sold cookware to J.C. Penney, including stainless steel cookware. Plaintiffs assert that the terms of the purchase contracts between Plaintiffs and Defendant included language requiring Defendant to defend and indemnify Plaintiffs in the event a claim was made against merchandise Plaintiffs bought from Defendants. Plaintiffs also contend that Defendants agreed to obtain and maintain liability

1

insurance naming Plaintiff J.C. Penney Purchasing Corporation and its affiliated companies and divisions as a covered entity under its liability policy.

On or about August 23, 2008, Tonja Littrell ("Ms. Littrell") was allegedly injured while using a 12" skillet purchased at a J.C. Penney retail store in north Texas. Ms. Littrell sustained second degree burns when the handle of the skillet separated from the body of the skillet, causing hot grease to splash and ignite, burning her legs and arm. Ms. Littrell filed suit against Plaintiffs and Defendant in Collin County, Texas, in a suit styled *Tonja Littrell, Jeff Litrrell and Tonja and Jeff Littrell, as Next Friend of R.L., a Minor v. J.C. Penney Corporation Inc., et al.,* cause number 401-02252-2010. The underlying litigation alleged that the skillet was defective due to the spot weld design and a defect in the manufacturing process. On October 11, 2012, Plaintiff J.C. Penney Corporation entered into a confidential settlement agreement with Ms. Littrell, individually and on behalf of her minor child. After settlement, Plaintiff J.C. Penney Corporation made a demand upon Defendant to reimburse it for the settlement amounts paid and for its defense costs. Defendant denied Plaintiffs' claim.

On June 4, 2014, Defendant filed its motion for partial summary judgment, alleging that the indemnity provision on which Plaintiffs rely is unenforceable and invalid as a matter of law because it fails to meet the fair notice requirements under Texas law (Dkt. #10). On June 18, 2014, Plaintiffs filed their response (Dkt. #13). On June 30, 2014, Defendant filed its objections and reply (Dkt. #14). In connection with this motion, the Court granted Plaintiffs' motion To conduct in camera inspection (Dkt. #16), and a document was sent to the Court for its review.

On August 25, 2014, Defendant filed another motion for summary judgment, asserting that it had no statutory duty to indemnify or defend Plaintiffs because it neither sold nor manufactured the skillet in question (Dkt. #18). Further, Defendant contends that it did obtain

liability insurance and named Plaintiffs as an additional insured. On September 8, 2014, Plaintiffs filed their response (Dkt. #20). On September 18, 2014, Defendant filed its objections and reply (Dkt. #21).

On October 7, 2014, Plaintiffs filed their motion for oral argument regarding the two summary judgment motions (Dkt. #24). This request was unopposed.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477

U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### A. *Defendant's Motion for Partial Summary Judgment (Dkt. #10)*[1]

In its first motion for partial summary judgment, Defendant contends that the indemnity provision in the purchase order contracts with Plaintiffs is not conspicuous, and does not comport with the fair notice requirements of Texas state law (Dkt. #18 at 8).

"Because this court's jurisdiction is predicated on the federal diversity statute, Texas substantive law governs this dispute." *Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010); *see also H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 150 F.3d 526, 529 (5th Cir. 1998) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938)). The parties do not dispute that Texas substantive law applies in this case.

---

[1] Defendant objects to Plaintiffs' Exhibit A, which is a depiction of the indemnity provision purportedly found on the reverse side of a purchase order between Plaintiffs and Defendant. Defendants object to this exhibit on the basis that it is not a complete copy of the purchase order, and that it lacks authenticity and foundation as to its applicability to the cookware set at issue in the underlying lawsuit. The Court agrees, and finds that this incomplete copy is inadmissible because it is not a complete copy, and it lacks foundation as to the actual cookware at issue in this litigation. Defendant's objection is sustained.
Defendant also objects to exhibits B, C, D, and E. Defendant objects to exhibit B on the basis that this exhibit lacks foundation as to the cookware set at issue. The objection is overruled. Defendant objects to exhibits C, D, and E on the basis that these exhibits lack relevance to the conspicuousness issue that is before the Court in this particular motion for summary judgment. Defendant's objection is sustained, and these exhibits will not be considered by the Court in its ruling on Defendant's Motion for Partial Summary Judgment (Dkt. #10).

4

For an indemnity provision to be valid and enforceable, it must comport with the fair notice requirements of conspicuousness and express negligence. *Ethel Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707-08 (Tex. 1987); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508-09 (Tex. 1993). Compliance with the fair notice requirements is a question of law for the Court. *Dresser*, 853 S.W.2d at 509.

Defendant does not contend that the provision fails the express negligence test, only that the provision is not conspicuous. "The conspicuous requirement mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" *Dresser*, 853 S.W.2d at 508 (citation omitted). The Texas Supreme Court described conspicuousness as follows:

> When a reasonable person against whom a clause is to operate ought to have noticed it, the clause is conspicuous. For example, language in capital headings, language in contrasting type or color, and language in an extremely short document, such as a telegram, is conspicuous.

*Id*. at 510-11 (citing TEX. BUS & COM CODE § 1.201(b)(10)).

The indemnity provision at issue in this case is printed on the reverse side of a purchase order in small type, and was presented to the Court for its review in camera. The front side of the purchase order contains the terms of the purchasing agreement in black and blue type font. The front side of the purchase order, above the signature line, contains the following language:

> SELLER AND J. C. PENNEY PURCHASING CORPORATION AGREE TO BE BOUND BY ALL TERMS AND CONDITIONS HEREIN AND ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE PART OF THIS CONTRACT AND SHOULD BE READ CAREFULLY. Any provisions in Seller's invoices, billing statements, acknowledgement forms, or similar documents which are inconsistent with the provisions of this contract whether or not signed by the Company's representatives shall be of no force or effect. Seller warrants that all Legal Requirements (as defined on the reverse side) with respect to providing information on the goods covered by this contract were satisfied and that the information is accurate.

5

(original purchase contract submitted for in camera inspection, *see* Dkt. #16). The reverse side of the purchase order is set out in a small, light gray-colored type. The purchase order paper is thin, so it is difficult to distinguish the provisions printed on the reverse side, as some of the dark lines printed on the front side of the purchase order are visible through the paper making the font even more difficult to read. The indemnity provision is provision number nine (9) out of twenty-seven (27) provisions on the reverse side of the purchase order, and appears in the first column more than halfway down the left side of the purchase order. The number and heading "Indemnification" appears in bold font. The provision also contains some language in all caps in the middle of the paragraph. The paragraph appears in the same font, same bold heading, same color, and same size as all the other unrelated provisions contained on the reverse side of the purchase order. The indemnification provision contains the following language and is set out in full:

> **9. Indemnification.** (a) Seller will indemnify and hold harmless Company, Reseller Purchasers and their respective subsidiaries, affiliated companies and divisions, and their directors, officers, employees and agents (collectively referred to as "Indemnitees"), from and against any and all claims, actions, proceedings, losses, profits, liabilities, judgment, penalties, liens, forfeitures, fines, damages (including liquidated, consequential and punitive damages), costs and expenses, including counsel fees and costs of settlement (collectively referred to as "Claims"), which shall arise out of or result from (1) any breach or alleged breach of any representation, warranty or other obligation of Seller under this Contract; (2) any damages to or destruction of property or any injury to or death of persons arising or resulting from any actual or alleged defect in the Merchandise or any act (of commission or omission) of Seller or Seller Representatives with respect to the Merchandise; (3) any damage to or destruction of property or any injury to or death of any Seller Representative arising or resulting from his/her representation of, or work for, Seller with respect to the Merchandise or any other product or service offered, sold or performed by or on behalf of Seller; or (4) a determination by any governmental authority that a Seller Representative is an employee, agent, contractor or representative of Company, any Reseller Purchaser or any other Indemnitee. IN THE CASE OF A CLAIM BASED UPON AN ACTUAL OR ALLEGED DEFECT IN THE MERCHANDISE OR A BREACH OR ALLEGED BREACH OF ANY REPRESENTATION, WARRANTY OR GUARANTEE AS TO THE MERCHANDISE, SELLER WILL INDEMNIFY

> INDEMNITIES [sic] (1) EVEN IF THE CLAIMS IS [sic] CAUSED BY THE ACTUAL OR ALLEGED SOLE OR PARTIAL NEGLIGENCE OR OTHER FAULT OF THE COMPANY OR ANY OTHER INDEMNITEES, OR IS ONE FOR WHICH COMPANY OR SUCH INDEMNITEE MAY BE HELD STRICTLY LIABLE TO A THIRD PARTY; AND/OR (II) EVEN IF COMPANY, ANOTHER INDEMNITEE, OR ANY OTHER PERSON, ALONE OR WITH OTHERS, DESIGNED, DEVELOPED THE SPECIFICATIONS OF, OR SUPPLIED OR PROCURED ANY OF THE MATERIAL OR COMPONENTS FOR, THE MERCHANDISE. In the case of Penney private label Merchandise, even if Seller cannot be identified specifically as the seller of particular Merchandise containing an actual or alleged defect, Seller will indemnify Indemnitees if Seller can be identified by Company as having been one of several sellers of similar Merchandise. (b) If any Claim base upon any of the matters referred to in subparagraph (a) above is brought against any Company's prior approval of any counsel employed to defend such Claim. If Company does not approve counsel to be employed by Seller, Company or any other Indemnitee shall have the right to retain its own counsel, and the expense of such counsel shall be paid by Seller. Indemnitees shall have the right to participate fully in all proceedings, including settlement discussions; shall be provided copies of notices, orders and all other papers; and shall be given prior notice by Seller of all meetings, hearings, and other discussions involving such Claim. Seller shall consult with Indemnitees and keep Indemnitees fully advised of the progress of any such Claim, shall make no admissions or otherwise act in a manner that might be prejudicial to any Indemnitee's right in connection with any such Claim, and shall have no right to settle or discuss settlement of any such Claim, without the prior written approval of the affected Indemnitee(s). If Seller shall fail to undertake any Indemnitee's defense within a reasonable time after receiving notice of a Claim, such Indemnitee may undertake its own defense, without affecting in any manner its right to indemnity hereunder. (c) Any controversy between Seller and any Indemnitee concerning Seller's obligations under this indemnity may be litigated in the same forum and concurrently with any action or proceeding against such Indemnitee to which such controversy may relate, and Seller agrees to appear voluntarily in such forum and submit itself to the jurisdiction thereof.

(*See* Dkt. #16, document produced for in camera inspection).

Plaintiffs concede that "the copies of the purchase orders between Plaintiffs and Defendant are difficult to read, and that the 8" x 11" copies are condensed copies of microfiche copies of carbon paper, making the copies even more difficult to read" (Dkt. #13 at 6). Plaintiffs contend that the indemnity provision is not all in the same font, but that the word "Indemnification" is in bold font. Plaintiffs also assert that the language to indemnify and

defend Plaintiffs is in all capital letters, and it is one of only two provisions that contain language in all capital letters. Plaintiffs also argue that the provision on the front page of the purchase order draws attention to this provision, and that these factors combined are enough to demonstrate that the indemnity language passes the conspicuousness part of the fair notice test.

The Court must determine whether a reasonable person "ought to have noticed" the indemnity provision, or that it would attract the attention of a reasonable person. *See Dresser*, 853 S.W.2d at 508, 510-11. After reviewing the provision, the Court finds that the indemnity provision at issue here would not attract the attention of a reasonable person, and the provision does not stand out such that a reasonable person "ought to have noticed it." *Id*. The provision here is located on the back of a purchase order and printed in a light font on nearly transparent paper. The indemnity provision is number nine (9) out of twenty-seven (27) provisions that are all contain similar bolded headings and small font size and type. The entire reverse side of the purchase order is filled with this small and difficult to read font, and nothing about the indemnity provision itself stands out from the other provisions. *See In re Key Equip. Finance Inc.*, 371 S.W.3d 296, 301 (Tex. App. – Houston [1st Dist.] 2012, no pet.) (stating that whether a provision is conspicuous depends on the conspicuousness of the provision in relation to other provisions). The Texas Courts of Appeals have noted that "indemnity provisions set forth among unrelated terms and conditions on the backs of forms, and printed without distinguishing typeface, have generally been held not to be conspicuous." *U.S. Rentals, Inc. v. Mundy Serv. Corp.*, 901 S.W.2d 789, 793 (Tex. App. – Houston [14th Dist.] 1995, writ denied). In the *U.S. Rentals* case, the indemnity provision was the seventh of fifteen unrelated provisions printed on the back of the rental contract, and the headings and text of all fifteen items were printed in the same respective sizes and types. *Id*. While Plaintiff argues that this case is distinguishable from the present case

because the heading ("**9. Indemnification**") was in bolded font, the Court disagrees that this distinguishes it from other provisions. All twenty-seven (27) provisions contain the same bolded font for the headings for each provision, all of which are not related to the indemnity provision. Thus, this case is exactly on point, and the bolded heading alone is not sufficient to draw the attention of the reader to the indemnity provision itself. *See also Safway Scaffold Co. v. Safway Steel Prods.*, 570 S.W.2d 225, 228 (Tex. App. – Houston [1st Dist.] 1978, writ ref'd n.r.e.) (provision on beck of rental form, surrounded by unrelated terms in small and light type was not conspicuous); *K&S Oil Well Serv., Inc. v. Cabot Corp., Inc.*, 491 S.W.2d 733, 738 (Tex. App. – Corpus Christi 1973, writ ref'd n.r.e.) (indemnity provision on back of a sales order form surrounded by unrelated conditions was not conspicuous). In the *Dresser* case, the Texas Supreme Court found that the indemnity provisions were unenforceable. 853 S.W.2d at 511. Those provisions were located "on the back of a work order in a series of numbered paragraphs without headings or contrasting type." *Id*. Further, the contract contained "eighteen uniformly printed and spaced paragraphs printed on the reverse side of the contract with a provision incorporating all eighteen paragraphs on the front side of the contract." *Id*. at 511 n.6. This is similar to the indemnity provision at issue here, and the Court finds that it is not conspicuous.

Further, the capitalized language contained within the indemnity paragraph is not enough to make the provision conspicuous. Even in review on the copy provided to the Court in camera, the provision is still small and difficult to read. It is almost impossible to distinguish the capitalized language, which does not stand out from the other language in the provision itself or on the page as a whole. Nor does the language on the front of the purchase order make the provision conspicuous. The language on the front merely directs the attention of the reader to the fact that there are terms and provisions on the reverse side of the agreement, but do not

indicate that an indemnity provision is one of the many provisions. The text reads that the parties to the agreement "AGREE TO BE BOUND BY ALL TERMS AND CONDITIONS HEREIN AND ON THE REVERSE SIDE HEREOF, ALL OF WHICH ARE PART OF THIS CONTRACT AND SHOULD BE READ CAREFULLY." There is nothing to suggest that an indemnity agreement is contained within the paragraphs, and a review of the purchase order does not allow the reader to easily locate the indemnity provision among the other provisions.

In *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1079-81 (5th Cir. 1996), the Fifth Circuit considered an indemnity provision on the back of a purchase order. The front of the purchase order contained language that stated, "Please enter our order for material or services shown below subject to all terms, conditions and instructions contained herein and on the reverse side." *Id.* at 1079. The sentence was in small print, but was highlighted in red. *Id.* On the reverse side of the purchase order there were "19 numbered paragraphs, without headings, in very small italic print." *Id.* The Fifth Circuit held that the indemnity provision in *McGehee* was "analytically indistinguishable" from the purchase order involved in the *Dresser* case, and therefore, inconspicuous and unenforceable under Texas law. *Id.* at 1081. The Court finds that the same result is true in the present case. The provision at issue is "analytically indistinguishable" from the *Dresser* case, and thus, the provision is not conspicuous and unenforceable.

Plaintiffs argue that the indemnity provision at issue here is more akin to the provision in *Tutle & Tutle Trucking, Inc. v. EOG Res., Inc.,* 391 S.W.3d 240 (Tex. App. – Waco 2012, pet. dism'd). The indemnity provision in *Tutle* appeared in paragraphs 6A and 6B of a master services contract, and the language was in all capital letters in a slightly larger font. *Id.* at 246. Additional indemnification language appeared in paragraph 6E, and the party opposed to

indemnification argued that paragraph 6E did not meet the conspicuousness test. *Id*. Here, the court found that paragraph 6E was sufficiently conspicuous to provide fair notice because it was capitalized, different from other provisions, numerically linked to paragraphs 6A and 6B (which all parties agreed were conspicuous), and was not in "small, light type on the back of a form and was surrounded by unrelated terms." *Id*. However, the indemnity provision at issue in this case is not similar to the provision in *Tutle*, and, in fact, is more similar to the provision that the appeals court contrasted with, as the agreement here does appear in small, light type on the back of a form and is surrounded by unrelated terms. This case does not support Plaintiffs' argument.

Further, Plaintiffs point to *Tynes v. Nations Rent of Texas L.P.*, No. 10-05-00372-CV, 2006 WL 2438683, at *2 (Tex. App. – Waco Aug. 23, 2006), in which the indemnity provision was located in the seventh paragraph of thirty-one numbered paragraphs. However, contrary to the provision at issue here, the heading was in capital letters, and the provision itself is in bold, capital letters. *Id*. The indemnity provision at issue here has neither distinguishing characteristics. Similarly, in *Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915 (Tex. App. – Dallas 2013, no pet.), while the release was in "nearly illegible 7 point font," the front instructed the reader to read carefully, and above the signature line in all capital letters the following language appeared: "I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS…" *Id*. at 920. The court found that the purpose of the entire document was to release the facility from any claims, it leaves no doubt as to its intent, and specifically referred to an indemnity agreement in all capital letters. *Id*. at 920-21. Thus, the court found it was sufficiently conspicuous. Again, the indemnity provision before the Court in the present case is different, as the purpose of the agreement was a purchase contract and there is no specific

reference to an indemnity provision. Accordingly, the Court finds that the indemnity provision here is not conspicuous and unenforceable under Texas law.

Defendant further contends that the only exception to the fair notice requirements is when "the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement." *Dresser*, 853 S.W.2d at 508, n.2. Defendant argues that James Mazzone ("Mazzone"), Welco's general manager during the period in question, was responsible for reviewing and approving purchase orders from J.C. Penney on behalf of Welco (Dkt. #10, Ex. E at ¶¶ 2, 4). It is Mazzone's signature that appears on the purchase order produced by Plaintiffs in this suit. *Id*. at Ex. B. Mazzone states that he had no knowledge of the indemnity provision on the reverse side of the purchase order, and Plaintiffs have not established or argued otherwise. Plaintiffs assert only that absent fraud or mistake, Texas courts presume that a party who signs a contract knows its contents (Dkt. #13 at 10 (citing *In re Bank One, N.A*., 216 S.W.3d 825, 826 (Tex. 2007)). This is not sufficient, however, to demonstrate actual knowledge of the indemnity provision, and this exception does not apply.

Finally, Plaintiffs briefly suggest that Defendant's conspicuousness defense is barred by "the equitable defense of laches" (Dkt. #13 at 4). Plaintiffs contend that "at no time in the 3 year history of the file did Welco ever assert that the provision in question was not a valid indemnity provision, or that it was not agree to by Welco." *Id*. Laches is an "equitable defense" related to the "unreasonable, prejudicial delay in commencing suit." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1968 (2014). The District Court for the Northern District of Texas has also defined laches as "an equitable doctrine that prevents a plaintiff from postponing the assertion of his or her rights." *E.E.O.C. v. Rock-Tenn Services Co., Inc*., 901 F. Supp. 2d 810, 832 (N.D. Tex. 2012). Plaintiffs cite no case law, and the Court is aware of none, that suggest that a

plaintiff can use this equitable doctrine to bar a defendant from asserting a legal defense in its answer after a plaintiff has filed suit simply because the defendant did not raise the defense prior to the lawsuit. This argument is meritless, and the Court finds that Defendant's conspicuousness defense is not barred by laches.

Accordingly, the Court finds that Defendant Welco, Inc.'s Motion for Partial Summary Judgment (Dkt. #10) is granted, the indemnity provision underlying Plaintiffs' breach of contract claim for defense and indemnity is not conspicuous, invalid, and unenforceable under Texas law, and Plaintiffs' claim for breach of contract – duty to defend and indemnify is dismissed.

## B. *Defendant Welco, Inc.'s Motion for Summary Judgment (Dkt. #18)[2]*

Defendant's second motion for summary judgment argues that it is entitled to summary judgment on Plaintiffs' statutory claims under Chapter 82.002 of the Texas Civil Practice and Remedies Code and for Plaintiffs' claim for breach of contract asserting that Defendant failed to obtain liability insurance naming Plaintiffs as an additional insured.

Chapter 82.002 of the Texas Civil Practice and Remedies Code states:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

Chapter 82 defines a products liability action as one "against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." TEX. CIV. PRAC. & REM. CODE § 82.001(2). A manufacturer is defined as a "person who is a designer, formulator, constructor, rebuilder, fabricator, producer,

---

[2] Defendant also objects to Plaintiffs' exhibit A, F, and E, on the basis of relevance, foundation, and hearsay. Defendant's objections are overruled.

compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce." *Id*. at § 82.001(4). "Therefore, a manufacturer's duty to indemnify under Chapter 82 is established when the plaintiff is a seller, the party the plaintiff seeks indemnification from is a manufacturer, and the underlying litigation, in which the seller has incurred a loss, is a products liability action." *FLS Miljo, Inc., v. Munters Corp.,* 682 F. Supp. 2d 681, 689 (N.D. Tex. 2010).

Defendant contends that it neither sold nor manufactured the skillet in question in this litigation. Defendant asserts that it did not sell a 12" skillet to Plaintiffs, and did not sell a 15-piece cookware set. Defendant also asserts that the markings on the skillet are not those typically placed on its products. Plaintiffs contend that whether Defendant sold the skillet to Plaintiffs is a question of fact. Plaintiffs provide evidence of a change order showing that Defendant sold at least 3,825 12" skillets to Plaintiffs during their relationship. Further, Plaintiffs provide inventory search materials and the affidavit of Charles Chrissy that recite how the search for the seller or manufacturer of the skillet was performed, photographs of Ms. Littrell's cookware set, and photographs of Defendant's cookware line. The Court agrees this evidence is sufficient to establish a material fact question for the fact finder to resolve.

Defendant also moves for summary judgment on Plaintiffs' claim for breach of contract for failing to obtain and maintain liability insurance that named Plaintiffs as an additional insured. Defendant attaches a copy of a certificate of liability insurance that notes at the bottom that certificate holder is included as additional insured (Dkt. #18, Ex. B). Plaintiffs assert that there is a question of fact as to whether this is sufficient to satisfy the requirements of the contract, or that it actually obtained insurance that covered Plaintiffs for a products liability suit arising out of a product allegedly sold by Defendant. The Court agrees that there is a fact issue

as to whether Defendant obtained and maintained liability insurance to satisfy its obligations under the contract. Accordingly, Defendant's motion for summary judgment is denied.

## CONCLUSION

Based on the foregoing, the Court finds that Defendant Welco, Inc.'s Motion for Partial Summary Judgment (Dkt. #10) is **GRANTED**, the indemnity provision underlying Plaintiffs' breach of contract claim for defense and indemnity is not conspicuous, invalid, and unenforceable under Texas law, and Plaintiffs' claim for breach of contract – duty to defend and indemnify is dismissed.

In addition, the Court finds that Defendant Welco, Inc.'s Defendant Welco, Inc.'s Motion for Summary Judgment (Dkt. #18) is **DENIED**. Plaintiffs' statutory claim for defense and indemnity and breach of contract for failure to obtain and maintain liability insurance will remain in this litigation as both have questions of fact that must be resolved by the fact finder.

Finally, the Court finds Plaintiffs' Motion for Oral Argument (Dkt. #24) is **DENIED** as moot. It is not necessary for the Court to view the skillet or cookware at issue in this case at this time.

**IT IS SO ORDERED.**
**SIGNED this 2nd day of December, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE